UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

RAY OGLESBY,

                  Defendant.

------------------------------------------X

04 Cr. 424-08 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

On May 11, 2005, Defendant Ray Oglesby ("Oglesby") pled guilty to conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). For the reasons set forth below, Oglesby will be sentenced to 120 months' imprisonment and a five-year term of supervised release. A special assessment of $100 is mandatory and is due immediately.

**Prior Proceedings**

On May 6, 2004, the government filed a sealed indictment against Oglesby and his co-defendants, charging them with a single count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Oglesby was

1

issued the same day. On August 18, 2004, he was placed in state custody, and was resentenced on September 21, 2004 to five months' imprisonment for prior state convictions. Oglesby was placed in federal custody on January 3, 2005, and has remained in custody since that time. On May 11, 2005, Oglesby appeared before the Honorable Debra C. Freeman of this District and allocuted to the criminal conduct charged in the indictment. Oglesby is scheduled for sentencing on October 13, 2006.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission (the "Sentencing Commission"). Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed --

    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

2

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for --

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5)    any pertinent policy statement ... [issued by the Sentencing Commission];

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

Oglesby was born on May 29, 1983, in the Bronx, New York. Oglesby has three biological siblings, one of whom passed away at age seven. He also has three maternal half-siblings (each of whom

3

has a different father). He reported having a very good relationship with his siblings. All four of his older surviving siblings reside in the Bronx, and his one younger sibling is currently in foster care. Oglesby's mother died of pneumonia when he was five years old, and he was raised by an half-sister because his father was "not around."

His half-sister reported that Oglesby was a "good kid," but noted that she filed a PINS petition when he was fifteen years old because he was truant from school. She and Oglesby speak on a weekly basis, and he plans to live with her upon his release.

Oglesby and his father have re-established contact in the past few years, and speak periodically on the telephone.

The defendant is single and has no children.

Oglesby received his high school diploma in 2000 from Ives School, located in Lincolndale, New York. He reported that Ives School is an alternative boys' school and that he was placed there by the family court.

The defendant has an extensive history of drug abuse. Oglesby reportedly began using marijuana on a daily basis around the age of thirteen, and continued until his arrest. He started using ecstasy in 2000, and also used that drug on a daily basis

4

until his arrest. Oglesby also reported drinking heavily two to three times a week. He has never received treatment for drug or alcohol abuse.

Oglesby has reportedly never been legally employed.

Oglesby has two prior adult criminal convictions. On December 5, 2003, Oglesby pled guilty to two separate instances of driving while intoxicated. For the first offense, he was sentenced to a conditional discharge, had his license revoked, and was ordered to pay a $500 fine. On March 19, 2004, he was sentenced on the second offense to three years' probation. Following his arrest for the instant offense, Oglesby was resentenced on September 21, 2004 to five months' imprisonment for each of the state offenses.

### The Offense Conduct

The indictment filed in this action charges that from at least 1999 through May 2004, Oglesby, along with his nineteen co-defendants and others, was a member of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-

5

to-hand heroin transactions. The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

The government contends that Oglesby acted as a "manager" for the Organization, but the indictment does not specify whether he acted as a manager or as a "worker" or "pitcher." Managers in the Organization sold heroin directly to retail customers and provided heroin on consignment to workers, who then would sell the heroin to customers, paying the managers for the heroin as they were able to sell it. Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or to managers to complete sales of heroin.

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half a kilogram per month, although the actual amount could vary from month to month.[1] With

---

[1] Although the government asserts that the Organization sold "as much as fifty bundles of heroin a day," which is the equivalent of 500 glassines of heroin a day, the Court finds an average daily distribution of twenty-five bundles. The trial testimony of one cooperating witness, who is a former member of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] ever remember selling in one day." (Caesar Trial Tr. at 137) (emphasis added). That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred." (Caesar Trial Tr. at 137.)

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles." (Caesar Trial Tr. at

6

respect to Oglesby specifically, the Court finds that he should be held accountable for conspiring to distribute between one and three kilograms of heroin during his involvement with the conspiracy between December 29, 2003 and May 11, 2004, when most of his co-defendants were arrested.

## The Relevant Statutory Provisions

The statutory minimum term of imprisonment for the sole count of the indictment is ten years, and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. If a term of imprisonment is imposed, the Court shall impose a subsequent term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

---

387.) On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles." (Caesar Trial Tr. at 388.) However, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be boasting about how much drugs they sold that day." (Caesar Trial Tr. at 388) (emphasis added).

The Organization operated in three shifts, with two people -- a manager and a pitcher -- working each shift. The pitcher conducted most of the sales, while the manager may have sold if the opportunity arose. (Caesar Trial Tr. at 135.) The Court considered both the structure of the Organization and the testimony presented regarding sales when determining the average daily distribution of heroin to attribute to the conspiracy.

7

Oglesby is not eligible for probation because the instant offense is a Class A felony and one for which probation has been expressly precluded by statute. 18 U.S.C. § 3561(a)(1)-(2), 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

Oglesby may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court pursuant to 21 U.S.C. § 862(b)(1)(B).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole, or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole, or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

8

**The Guidelines**

The March 27, 2006 edition of the United States Sentencing Commission, <u>Guidelines Manual</u> ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11.

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1. The Court has determined that Oglesby is responsible for distributing between one and three kilograms of heroin. Pursuant to the Drug Quantity Table, the base offense level is 32. U.S.S.G. § 2D1.1(c)(4).

Based on Oglesby's plea allocution, he has shown recognition of responsibility for the offense. Based on his timely notification of his intention to plead guilty and because the base offense level is greater than 16, the offense level is reduced by three levels pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b). The resulting adjusted offense level is 29.

Oglesby receives two criminal history points for each of his prior state criminal convictions. U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2), (k)(1). At the time the instant offense was committed, the defendant was under a conditional discharge, as well as serving a term of probation. Therefore, two additional points are added, pursuant to § 4A1.1(d). The total of the criminal

9

history points is six, establishing a Criminal History Category of III.

Based on an offense level of 29 and a Criminal History Category of III, the Guidelines range for imprisonment is 108 to 135 months. However, because the statutory minimum sentence is 120 months, the Guidelines range becomes 120-135 months. U.S.S.G. § 5G1.1(c).

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(c).

Oglesby is not eligible for probation because the instant offense is a Class A felony, pursuant to U.S.S.G. § 5B1.1(b)(1), and because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5C1.1(f).

The fine range for the instant offense under the guidelines is from $15,000 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and (c)(4). Subject to Oglesby's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,952.66 to be used for imprisonment, a monthly

cost of $287.50 for supervision, and a monthly cost of $1,736.98 for community confinement.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In light of all of the factors enumerated in section 3553(a), and the statutory minimum sentence of ten years, it is determined that a Guidelines sentence is warranted.

## The Sentence

In determining an appropriate Guidelines sentence, the Court is mindful of Oglesby's longtime drug abuse, and the fact that although he has several prior convictions, Oglesby had never

cost of $287.50 for supervision, and a monthly cost of $1,736.98 for community confinement.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In light of all of the factors enumerated in section 3553(a), and the statutory minimum sentence of ten years, it is determined that a Guidelines sentence is warranted.

## The Sentence

In determining an appropriate Guidelines sentence, the Court is mindful of Oglesby's longtime drug abuse, and the fact that although he has several prior convictions, Oglesby had never

been sentenced to a period of imprisonment before his arrest for the instant offense. These factors suggest that a sentence at the bottom of the Guidelines range, coupled with drug treatment, would most appropriately reflect the seriousness of the offense, deter future criminal conduct, and provide Santiago with an opportunity for rehabilitation. For the instant offense, Oglesby will be sentenced to 120 months' imprisonment, to be followed by a five-year term of supervised release. As Oglesby has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

A special assessment fee of $100, payable to the United States, is mandatory and due immediately. Because Oglesby lacks financial resources, and in consideration of the other factors listed in 18 U.S.C. § 3572, no fine is imposed.

Oglesby shall report to the nearest Probation Office within seventy-two hours of release from custody. It is recommended that he be supervised by the district of residence.

As mandatory conditions of supervised release, Oglesby shall (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug

testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1) Santiago will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse provider, as approved by the Probation Officer. Santiago will be required to contribute to the costs of services rendered, in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2) The Defendant shall participate in an alcohol aftercare treatment program under a co-payment plan, which may include urine testing at the direction and discretion of the probation officer.

This sentence is subject to modification at the sentencing hearing now set for June 13, 2006.

It is so ordered.

New York, NY
October   11 , 2006

ROBERT W. SWEET
U.S.D.J.

13